UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN P. OSBURN,

                Petitioner,

      v.                                  Case No. 16-CV-356

RANDALL R. HEPP,[1]

                Respondent.

## REPORT AND RECOMMENDATION

### 1. Facts and Procedural History

Zachary Gallenberg was murdered by his longtime friend, Steven P. Osburn, on August 6, 2010. Pursuant to a plea agreement, Osburn pled guilty to charges of second degree intentional homicide and pointing a firearm at a person. (ECF No. 10-19 at 2-6 (all citations reflect the ECF pagination).)

Gallenberg and Osburn were drinking together on the evening of August 5 and early-morning of August 6, 2010, and were accompanied by Abby Alfaro. According to

---

[1] Osburn is incarcerated at Fox Lake Correctional Institution. *See* Offender Locator, Wisconsin Department of Corrections, available at https://appsdoc.wi.gov/lop/detail.do (last visited Oct. 9, 2018). The warden of this institution is Randall R. Hepp, https://doc.wi.gov/Pages/OffenderInformation/AdultInstitutions/FoxLakeCorrectionalInstitution.aspx (last visited Oct. 9, 2018). Therefore, in accordance with Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption is updated accordingly.

Alfaro's testimony at the preliminary hearing, at one point while they were all at Osburn's apartment Osburn grabbed Alfaro by the throat, straddled her, and strangled her. (ECF No. 10-11 at 8.) Gallenberg came into the room and pushed Osburn off of Alfaro. (ECF No. 10-11 at 8.) Later, Gallenberg went outside, ran down the sidewalk, and threw his arms over Osburn's shoulders. (ECF No. 10-11 at 10-11.) Osburn maneuvered to get Gallenberg off of his back and, as Gallenberg was stumbling backwards, Osburn drew a handgun and shot him. (ECF No. 10-11 at 11.)

Osburn was charged with first-degree intentional homicide, pointing a firearm at a person, strangulation, and intimidation of a victim. The state offered to amend the homicide charge to second-degree homicide in exchange for Osburn pleading guilty to that charge and the charge of pointing a firearm at a person. (ECF No. 13-3 at 3.) The state agreed to dismiss but read in, *see* Wis. Stat. § 973.20(1g)(b), the victim intimidation charge and dismiss outright the strangulation charge. (ECF No. 13-3 at 3.) According to Osburn, getting rid of the strangulation count was very important "[b]ecause that paints me as a monster. That makes me look like I just go out and strangle women and that I'm this murdering monster, and that's not the case." (ECF No. 10-21 at 48.)

The pre-sentence investigator mentioned the strangulation allegation in his report. (ECF No. 13-4 at 3, 8.) The prosecutor referred to the strangulation at sentencing when he offered it as an example of Osburn's anger. (ECF No. 10-20 at 13.) Osburn's attorney also addressed the strangulation at sentencing, denying the allegation and

2

Case 2:16-cv-00356-BHL    Filed 10/09/18    Page 2 of 19    Document 23

disputing the implication that Osburn is aggressive toward women. (ECF No. 10-20 at 35.) The court, however, never mentioned or even alluded to the strangulation allegation (aside from rotely noting that it had read and considered the presentence investigation report). On August 24, 2011, the circuit court sentenced Osburn to forty-eight years of imprisonment, consisting of twenty-eight years of initial confinement followed by twenty years of extended supervision. (ECF No. 10-2 at 1-5.)

Osburn alleges that his attorneys, Gerald Boyle and K. Richard Wells, misinformed him as to the role the strangulation allegations might play at sentencing. He argued before the trial court that, because of this misinformation, his attorneys were ineffective and his guilty plea involuntary. The trial court rejected this contention, finding that Osburn's reasons for accepting the plea "were the reduction in the charges, the dismissal of the strangulation, and being allowed to tell his side of the story." *State v. Osburn*, 2014 WI App 120, ¶ 31,358 Wis. 2d 711, 856 N.W.2d 346 (unpublished) (*see also* ECF No. 10-5). The trial court also found "that Osburn's real motivation for withdrawing his pleas was his disappointment in his sentence, not his attorney[s'] advice." *Id.* Concluding that these factual findings were not clearly erroneous, the court of appeals affirmed the trial court's decision. *Osburn*, 2014 WI App 120, ¶¶ 33-34. The Wisconsin Supreme Court denied review (ECF No. 10-8).

Osburn filed a petition for a writ of habeas corpus in this court on March 23, 2016. (ECF No. 1.) In that petition he presents two grounds for relief. First, his "plea was

3

unconstitutionally made insofar as he did not understand the legal effect of dismissing a criminal count, which was a condition of his plea agreement." (ECF No. 1-1 at 1.) Second, he "should be allowed to withdraw his guilty plea because it is based on his trial counsel's ineffective assistance insofar as he would not have entered his plea but for his counsels' unquestionably incorrect legal advice that, by his plea, he would foreclose State from arguing and the sentencing court from considering the facts of a dismissed count." (ECF No. 1-1 at 3.) The briefing regarding the petition is complete. (ECF Nos. 15, 19, 21.) On May 4, 2018, the Honorable Pamela Pepper referred Osburn's petition to this court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Gen. L.R. 72(b) (E.D. Wis.) (ECF No. 22.)

2. **Legal Standard**

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court generally may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)).

## 3. Analysis

### 3.1. Knowing, Intelligent, and Voluntary Plea

Osburn argues in his petition that, because he did not understand what role the strangulation allegations might play at sentencing, he "did not knowingly, intelligently, and voluntarily enter his guilty plea, and he should be allowed to withdraw it as a matter of due process." (ECF No. 1-1 at 3.) In his brief in support of his petition, Osburn addresses this claim only in a footnote to state: "Osburn's habeas petition identified an additional issue for habeas relief: that his guilty plea violated due process insofar as he did not understand the legal effect of dismissing the strangulation count. That issue is not herein raised, and Osburn makes no further argument that he is entitled to habeas relief because of it." (ECF No. 15 at 14, fn. 3 (citation omitted).)

The court finds that Osburn has abandoned this claim. *See Bates v. Baenen*, No. 11-CV-997, 2012 U.S. Dist. LEXIS 167956, at *11 (E.D. Wis. Nov. 27, 2012) (citing *Duncan v. State of Wis. Dept. Health and Family Serv.*, 166 F.3d 930, 934 (7th Cir. 1999) (stating that arguments that a party fails to develop in its brief in any meaningful manner will be deemed waived or abandoned); *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (stating that the failure to brief and argue an issue before the district court is grounds for finding that the issue has been abandoned)).

Alternatively, Osburn has waived all arguments in support of this claim by failing to address it in his brief. Absent any argument supporting the claim, the court finds that it fails upon its merits. Osburn has failed to demonstrate that the Wisconsin Court of Appeals' rejection of this claim was contrary to or involved an unreasonable application of clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**3.2. Ineffective Assistance of Counsel**

Claims of ineffective assistance of counsel are governed by the well-established two-prong approach set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Hicks v. Hepp*, 871 F.3d 513, 525 (7th Cir. 2017). A petitioner must demonstrate both that his attorney's performance was deficient and that he was prejudiced as a result. *Id.* at 525-26. On the first prong, the petitioner must show his attorney's performance was objectively unreasonable. *Id.* at 525. "What is objectively reasonable is determined by the prevailing professional norms." *Id.* But there is a wide-range of permissible conduct and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* (quoting *Strickland*, 466 U.S. at 690). As to the prejudice prong, "[t]his requires the petitioner to demonstrate a 'reasonable probability that, but for counsel's unprofessional errors,' the

outcome would have been different." *Id.* at 526 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009)).

When a claim of ineffective assistance of counsel is presented in a habeas petition, the petitioner faces "a high hurdle." *Id.* "The Supreme Court has instructed that under these circumstances, [the federal court] must employ a 'doubly deferential' standard, one which 'gives both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

Under Wisconsin law, there are two types of dismissals of criminal charges. A charge may either be "dismissed" or "dismissed but read in." Wisconsin law regarding read-in charges has been complex, nuanced, and at times contradictory. *See State v. Straszkowski*, 2008 WI 65, ¶58, 310 Wis. 2d 259, 750 N.W.2d 835. If a charge is "dismissed but read in," the defendant is not convicted of the offense but

> a circuit court may consider the read-in charge when imposing sentence but the maximum penalty of the charged offense will not be increased; a circuit court may require a defendant to pay restitution on the read-in charges; and a read-in has a preclusive effect in that the State is prohibited from future prosecution of the read-in charge.

*Id.* at ¶ 93.[2]

---

[2] During the plea colloquy, the court explained a read-in charge as follows: "And with regard to the charge that is to be dismissed and read in, Count 3, do you understand that while the Court will not sentence you on that charge, the Court may consider it for purposes of determining an appropriate sentence on the charges you are pleading to?" (ECF No. 10-19 at 6.) Osburn responded, "Yes, sir." (ECF No. 10-19 at 6.) Moreover, the standard Wisconsin Circuit Court "Plea Questionnaire/ Waiver of Rights" form, CR-227, which has not been provided to the court but which the record states Osburn completed (see, e.g., ECF No. 10-19 at 2) includes the following:
> I understand that if any charges are read-in as part of a plea agreement they have the

A charge that is simply dismissed is "dismissed outright." *State v. Frey*, 2012 WI 99, ¶43, 343 Wis. 2d 358, 817 N.W.2d 436. But unlike a charge that is "dismissed but read in," the defendant does not agree that the court may consider the allegations underlying the dismissed charge. Having said that, that does not mean that the court is prohibited at sentencing from considering allegations underlying the dismissed charge. At sentencing the court must consider the defendant's character, and as part of that assessment the court "may consider uncharged and unproven offenses." *Id.* at ¶¶ 46-47 (quoting *State v. Leitner*, 2002 WI 77, ¶45, 253 Wis. 2d 449, 646 N.W.2d 341).

Although the court at sentencing can consider the allegations underlying both charges that are dismissed and charges that are dismissed but read in, contrary to Osburn's assertion, these terms do *not* "mean[] essentially the same thing." (ECF No. 15 at 21; *see also* ECF No. 10-21 at 69-70 (Osburn testifying that the strangulation count was dismissed "but it was read in" because the prosecutor "brought it up").) A defendant who agrees that a charge may be dismissed but read in agrees that the court may consider it in sentencing. If a charge is simply dismissed, the defendant retains the ability to dispute the underlying allegations should they become relevant at

---

following effects:
Sentencing – although the judge may consider read-in charges when imposing sentence, the maximum penalty will not be increased.
Restitution – I may be required to pay restitution on any read-in charges.
Future prosecution – the State may not prosecute me for any read-in charges.

8
Case 2:16-cv-00356-BHL    Filed 10/09/18    Page 8 of 19    Document 23

sentencing.[3] It will then be up to the court to decide if the allegations are sufficiently reliable to merit consideration in its sentencing determination.

The distinction is exemplified by what occurred in Osburn's case. The prosecutor referred to the allegations underlying the strangulation count, and Osburn's attorney noted that Osburn disputed those allegations. Had the strangulation count been dismissed but read in, Osburn could not have argued that the court should not consider the charge when imposing a sentence.

In any event, the trial court never referred to the strangulation allegations in sentencing Osburn. Therefore, this court has no basis for determining whether the strangulation allegations factored in to the trial court's decision about what sentence to impose. And although a sentencing judge typically could explain later whether he considered the dismissed count in sentencing, *see Straszkowski*, 2008 WI 65, ¶ 25, , by the time of the hearing on Osburn's motion for post-conviction relief a new judge was presiding.

However, if defense counsel advised Osburn that the court was *prohibited* from considering a dismissed count in sentencing, that arguably constituted deficient representation. At a post-conviction hearing Boyle testified that, once the state agreed to dismiss the strangulation count, "there really wasn't much more to have to talk about." (ECF No. 10-21 at 17.) Boyle continued, "[I]t became a nonissue when you said we'll

---

[3] Also, unlike a charge that is dismissed but read in, a charge that is simply dismissed cannot be considered with respect to restitution.

dismiss it outright and won't read it in; and as far as I'm concerned, that ended it." (ECF No. 10-21 at 22.) Although he acknowledged that the sentencing judge would have been aware of the strangulation allegations from having read the criminal complaint, Boyle believed the court "would not consider a dismissed charge or any facts allegedly supporting that charge when he sentenced Mr. Osburn for the shooting of the young man that died." (ECF No. 10-21 at 17-18.) Boyle explained, "The fact that at one time, it was a charge and there were facts supporting it didn't bother me. I didn't think good Judge Gundrum was going to consider anything about something that wasn't appropriate to do, and he was a good judge, and he knew his business." (ECF No. 10-21 at 23; *see also* ECF No. 10-21 at 26.) If the court had mentioned the strangulation allegations in sentencing, Boyle testified he "would have immediately said, Judge, this is you're wrong in doing it; you can't do that." (ECF No. 10-21 at 23.) Boyle continued, "But, you know, the fact of the matter is he knew about it. I mean you can't erase it from memory. But this was a good judge. When they say I don't consider it, I believe them, that they won't consider it." (ECF No. 10-21 at 23.)

Boyle later explained his understanding that it would have been inappropriate for a judge to consider a dismissed count at sentencing as follows: "See, I mean -- well, it would be inappropriate for the judge to violate what he's supposed to do as a judge; and that is, if a case is dismissed and is not read in, to consider the facts surrounding the case in any way in his sentencing. I mean you just can't do that and I won't -- Judges

10
Case 2:16-cv-00356-BHL    Filed 10/09/18    Page 10 of 19    Document 23

don't do that. They don't need to do it." (ECF No. 10-21 at 24.) Although Boyle does not recall if he informed Osburn of this understanding, Boyle testified, "I know one thing: Mr. Osburn was told that the case was dismissed and was not being read in for the purposes of sentencing, and that really probably ended everything concerning that charge." (ECF No. 10-21 at 24.)

Read in its entirety, Boyle's testimony reflects that he believed not just that the sentencing judge *would not* consider the dismissed count, but that it *could not* consider the facts underlying a dismissed count. And that is not the law.

However, Osburn testified that his understanding of the effect of the dismissal of the strangulation count came not from Boyle but from Wells. (ECF No. 10-21 at 38-39, 75-76.) Based on his discussions with Wells, Osburn testified he understood the "strangulation [charge] is dismissed as if it was never charged. It was just as if it never happened.... It says it was supposed to be outright dismissed as it was never -- it was dropped. It was never -- as it was ever charged with -- to me. It was back to where it was." (ECF No. 10-21 at 38, 41; *see also* ECF No. 10-21 at 42 ("Q: What did he say would happen with that count? A: Dismissed outright as it was never even charged to me. It was done."); ECF No. 10-21 at 46 ("It was -- my understanding was that it was as if it was never charged to me; it was dropped. It was never going to be a thought, not a consideration. It was done."); ECF No. 10-21 at 75 ("'Dismissed' to me was gone outright just as it was never ever being charged to me."); ECF No. 10-21 at 76 ("When it

11

came to strangulation/suffocation, he said that -- I mean that was the focus. And he had said that, you know, it's as if it was never charged; it's gone. It's nothing to worry about, you know.").) Asked if there was "any discussion about whether the Court would be able to consider it at sentencing," Osburn responded, "No. It was supposed to be gone." (ECF No. 10-21 at 41.)

Wells testified that it was his understanding that, if a count was dismissed, "the judge wouldn't be allowed to use that in terms of increasing the penalty" in the sense of imposing a more aggravated sentence. (ECF No. 10-21 at 96.) However, he does not believe he ever discussed this specific point with Osburn. (ECF No. 10-21 at 96.)

The court accepts that Wells told Osburn that, when a charge is dismissed, it is as if it had never been filed. As far as it goes, that is an accurate statement of Wisconsin law. *See Frey*, 2012 WI 99, ¶ 47. Nonetheless, the statement is incomplete. Just as allegations that never resulted in criminal charges being filed may be relevant at sentencing, the same is true of dismissed criminal charges. Osburn has not shown that his attorneys ever explicitly told him that the court was prohibited from considering the strangulation allegations at sentencing. Rather, he simply inferred from what his lawyers told him that a dismissed charge will have no relevance at sentencing. Boyle and Wells could not correct Osburn's understanding because they shared his mistaken understanding.

The court doubts whether in every case defense counsel acts unreasonably if he fails to advise a client contemplating a plea offer of all of the intricacies of how uncharged conduct and dismissed counts might be relevant at sentencing. But for present purposes the court will presume that, given Osburn's expressed concerns regarding the strangulation count, it was unreasonable for Boyle and Wells to not explain that, although the charge was dismissed, the strangulation allegations might be relevant at sentencing. *Cf. Ashburn v. Korte*, 761 F.3d 741, 751 (7th Cir. 2014) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed.") (brackets and citation omitted). Thus, the court turns to the question of whether Osburn was prejudiced by any alleged deficient representation of his attorneys.

"In the context of a guilty plea, a petitioner demonstrates prejudice by 'show[ing] that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Prejudice does not depend upon the petitioner being able to prove that "had he gone to trial, the result of that trial would have been different than the result of the plea bargain." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017) (internal quotation marks omitted).

That is not to say that a defendant's likelihood of success at trial is irrelevant to the prejudice assessment. Courts assess prejudice by considering the defendant's

decision-making and thus consider all those factors that influence a defendant's decision to plead guilty. *See Lee*, 137 S. Ct. at 1966. The less likely it is that a defendant would have succeeded at trial, the less likely it is that the defendant will be able to prove that, but for his counsel's errors, he would have opted to go to trial rather than plead guilty. "Where a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." *Lee*, 137 S. Ct. at 1966. This is especially true when a guilty plea "offers him a better resolution than would be likely after trial." *Id.* Moreover, the defendant must demonstrate that rejection of the plea bargain would have been rational under the circumstances. *Id.* at 1968.

"But common sense … recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea." *Lee*, 137 U.S. at 1966. "When those circumstances are, from the defendant's perspective, similarly dire, even the smallest chance of success at trial may look attractive." *Id.*

Having said that, "[a] 'mere allegation … that [the defendant] would have insisted on going to trial is insufficient to establish prejudice.'" *Long v. United States*, 847 F.3d 916, 922-23 (7th Cir. 2017) (quoting *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005)). "Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's

expressed preferences." *Lee*, 137 S. Ct. at 1967. The court presumes the petitioner has not been prejudiced. *Perrone*, 889 F.3d at 908 (citing *United States v. Graf*, 827 F.3d 581, 584-85 (7th Cir. 2016)).

The court presumes that competent counsel would have fully advised Osburn of how the strangulation allegations might be relevant at sentencing. But more than merely telling Osburn that the allegations underlying a dismissed count can be considered at sentencing in assessing his character, competent counsel would also tell him that the strangulation allegations could be considered at sentencing *even if* Osburn were acquitted of the charges at trial. *See Frey*, 2012 WI 99, ¶47 (quoting *Leitner*, 2002 WI 77, 253 Wis. 2d 449, 474, 646 N.W.2d 341, 353); *see also State v. Bobbitt*, 178 Wis. 2d 11, 16-19, 503 N.W.2d 11, 14-15 (Ct. App. 1993). In short, unless he was acquitted of *all* charges and avoided sentencing altogether, it was possible that the court would consider the strangulations allegations. But by all indications, obtaining acquittal of all charges was extremely unlikely.

Osburn faced the very significant possibility that he would be convicted of first-degree intentional homicide and receive a mandatory life sentence. His best realistic hope at trial was conviction on the lesser charge of second-degree intentional homicide. (*See, e.g.*, ECF No. 10-21 at 12, 89-91, 101.) He achieved that result with the plea agreement.

The plea agreement also provided him with a material benefit with respect to the strangulation count. Again, Osburn incorrectly asserts in his brief in support of his petition that "dismissed" and "dismissed and read-in" mean "essentially the same thing." (ECF No. 15 at 21.) Rather than agreeing that the court may consider the allegations underlying the strangulation charge, as would be the case if the charge had been "dismissed and read-in," by obtaining the outright dismissal of the strangulation charge Osburn was free to dispute the allegations if they became relevant at sentencing and argue that the court should not consider them. And his attorney *did* dispute the allegations. (ECF No. 10-20 at 35.)

The Court in *Lee* accepted Lee's contention that deportation was the determinative factor in his decision to plead guilty; Lee would not have pled guilty if he knew it would result in him being deported. To Lee, deportation was such a dire consequence that it was worth the likelihood of spending relatively-nominal additional time in prison (and then being deported) to pursue the faint hope that he might avoid deportation by prevailing at trial.

It is not possible to characterize Osburn's amorphous concern of being seen as a "monster" at sentencing (*see* ECF No. 10-21 at 36-37, 44, 48, 61, 63, 64) as "similarly dire" as the mandatory deportation faced by Lee. Nor did the consequence of possibly being seen as a "monster" at sentencing compare to the mandatory life sentence, or even

simply a harsher sentence, that Osburn faced if he unsuccessfully pursued his faint hope of acquittal. *Cf. Lee*, 137 S. Ct. at 1966.

Although Osburn asserts that he would not have pled guilty if he knew the court could consider the strangulation allegations at sentencing (ECF No. 13-5, ¶¶ 26-33; *see also* 10-21 at 48), this after-the-fact assertion is insufficiently supported by contemporaneous evidence. It is true that the evidence is that Osburn was adamant in his denial of the allegations underlying the strangulation charge. (*See, e.g.*, ECF No. 10-21 at 16-17, 44.) But that does not constitute contemporaneous evidence that Osburn would have chosen to proceed to trial on all counts, including the first-degree intentional homicide count that might have resulted in a mandatory life sentence, unless the facts underlying the strangulation charge could not be considered by the trial judge at sentencing. Other than his own post-conviction testimony, Osburn has failed to present to this court sufficient evidence that supports the finding that his purported concern that the court might consider the strangulation allegations in sentencing was so grave that, had he known the court could do so, he would have pursued the slim hope of acquittal at trial on the homicide charge.

4. **Conclusion**

The court presumes that Boyle and Wells should have explained to Osburn that, when a charge is dismissed, the court can still consider the underlying allegations when assessing Osburn's character at sentencing. However, the same would be true of

acquitted charges. But unlike a charge that is dismissed but read in, where the defendant agrees that the court may consider the underlying allegations, a defendant can argue that the court should wholly disregard any charge that is dismissed outright.

To grant Osburn habeas relief the court would have to believe that, knowing that the judge could consider at sentencing the facts underlying the strangulation charge, Osburn would have forgone the plea agreement and proceeded to trial, risking the strong possibility of a mandatory life sentence and the near certainty of conviction of at least second-degree intentional homicide. That decision would not have been rational under the circumstances. Under the plea agreement Osburn obtained the best he could reasonably have hoped for at trial—conviction of the lesser charge of second-degree intentional homicide. Granted, as a consequence, he gave up the opportunity to proceed to trial where, presuming the state did not dismiss the strangulation count, he believes he would have been able to prove he was innocent of those charges. But if Osburn was convicted of any of the other counts at trial, at sentencing the court still could have considered the allegations underlying the strangulation count.

Accordingly, the Wisconsin Court of Appeals' rejection of this claim was not contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Having concluded that Osburn is not entitled to relief on any claim presented in his petition, **IT IS THEREFORE RECOMMENDED** that Osburn's petition for a writ of habeas corpus be **denied**.

**IT IS FURTHER RECOMMENDED** that the court deny Osburn a certificate of appealability, Osburn having failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253(c)(2).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a) whereby written objections to any order herein or part thereof may be filed within fourteen days of service of this order. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

Dated at Milwaukee, Wisconsin this 9th day of October, 2018.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge